UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LUWANA QUITIQUIT, et al.,

    Petitioners,

    v.

ROBINSON RANCHERIA CITIZENS BUSINESS COUNCIL, et al.,

    Respondents.
_____/

No. C 11-0983 PJH

**ORDER GRANTING MOTION TO DISMISS**

Respondents' motion for an order dismissing the petition for writ of habeas corpus came on for hearing before this court on June 22, 2011. Petitioners appeared by their counsel Angélica M. Millán, and respondents appeared by their counsel Lester J. Marston. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court GRANTS the motion as follows and for the reasons stated at the hearing.

**BACKGROUND**

This action was initiated by the filing of a petition for habeas corpus, pursuant to the Indian Civil Rights Act, 25 U.S.C. § 1302. Petitioners Luwana Quitiquit, Robert Quitiquit, Karen Ramos, Inez Sands, and Reuben Want are tenants of housing located on land under the control of the Robinson Rancheria of Pomo Indians of California ("the Tribe").

The Tribe is the beneficial owner of certain property located in Nice, Lake County, California. Title to the property is held by the United States in trust for the Tribe. The Robinson Rancheria Housing Department ("RRHD") is a governmental entity and an arm of the Tribe.

Respondents are the Tribal Council of the Robinson Rancheria of Pomo Indians and six individual members of the Tribal Council – Tracey Avila, the Tribal Chairperson; Curtis Anderson Jr., the Vice-Chairperson; Stoney Timmons, Tribal Member-at-Large; Nicholas Medina, Tribal Member-at-Large; Michelle Monlo, Tribal Secretary-Treasurer; and Kim Fernandez, Tribal Member-at-Large.

Petitioners currently reside in houses they contracted to purchase through a federally-funded low-income Indian housing program (the Mutual Help Homeownership Opportunity Program, or "MHOP") when they were enrolled members of the Tribe.[1] Through MHOP, the federal Department of Housing and Urban Development provides direct financial assistance to Indian housing authorities, with the goal of providing opportunities for homeownership.

The MHOP program for the Tribe was originally administered by the Northern Circle Indian Housing Authority ("NCIHA"), which accesses, constructs, and manages housing for member tribes. Petitioners (or their predecessors-in-interest) entered into lease agreements with NCIHA, in which petitioners agreed to rent the premises in a 25-year tenancy, with an option to purchase the home. Petitioners were also required to pay a monthly administration fee. In 2001, the Tribe withdrew from the NCIHA and assumed responsibility for administering the MHOP housing program. The NCIHA assigned all of its rights, title, and interest in the leases and the houses subject to the leases.

The members of the Tribal Council are elected for two-year terms by members of the Tribe. According to petitioners, the mid-2008 election was particularly contentious. The incumbent, respondent Tracey Avila, lost the initial election but was restored to office when the initial election was invalidated through the appeal process. Petitioners were among the members who opposed Avila and expressed their dissatisfaction with the conduct of the Tribal Council in October 2008.

In December 2008, the officers of the Tribal Council removed a number of

---

[1] Petitioners entered into the MHOP lease agreements at various times between April 1993 and December 1997.

2

individuals (including petitioners) from the tribal rolls. Some of the disenrolled members appealed the decision through the Bureau of Indian Affairs, but the BIA upheld the decision in April 2010.

Meanwhile, after the disenrollments, the Tribal Council enacted an ordinance establishing a Tribal Court. Pursuant to Tribal Ordinance No. 2.080, the Tribe granted to the Tribal Court jurisdiction to hear complaints for unlawful detainer, the procedures for which were set forth in Tribal Ordinance No. 2.050.

In July 2009, the Tribe issued notices of delinquency to petitioners, stating that they owed back rent, and that the notice constituted the final demand for payment of all amounts in arrears. The notices of delinquency requested that petitioners meet with officials of the RRHD to create a payment plan to resolve the lease violations. The Tribe set up payment plans, and made other efforts to get petitioners to cure the deficiencies, but in January 2010, served petitioners with 3-day notices to quit or pay rent. Petitioners did not pay the amounts owing, and refused to vacate the premises.

The Tribe then brought unlawful detainer actions against petitioners, which were tried separately on October 4, 5, and 6, 2010. Petitioners were represented by counsel. Following submission of post-trial briefing, the Tribal Court judge issued an opinion, decision, and order on January 20, 2011, finding in favor of the Tribe, and directing counsel for the Tribe to submit a proposed form of judgment and conclusions of law and fact for each case.

On February 25, 2011, the Tribal Court judge signed the proposed judgments as to each of the petitioners, finding petitioners "guilty of unlawful detainer," and ordering payment of amounts ranging from approximately $6,000 to $10,000 each, plus an additional $25 per day until the premises were vacated.

In addition, the court found that the Tribe was entitled to forfeiture of the leases, and ordered petitioners to vacate the premises within 10 days of being served with the judgment, (or risk being removed by the Robinson Rancheria Law Enforcement Department). Finally, the court ordered that petitioners not return to the Robinson

3

Rancheria without the written approval of the Tribal Council; and stated that failure to be in possession of such written authorization would be grounds for arrest for criminal trespass and for contempt of court.

Petitioners filed the present action on March 3, 2011, asserting that their evictions and effective "banishment" violated the Indian Civil Rights Act ("ICRA"), 25 U.S.C. § 1302. Petitioners seek an order prohibiting respondents from evicting them from their homes for non-payment of rent.

The ICRA provides that "[n]o Indian tribe in exercising powers of self-government shall" take any action that would be a violation of the First through Tenth and Fourteenth Amendments to the United States Constitution.  Petitioners allege that habeas relief is warranted because "their eviction from their homes on the reservation and tribal land is an illegal restraint on their liberty and freedom of movement."

Under 25 U.S.C. § 1303, "[t]he privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe."  In the present petition, petitioners allege violation of their rights to equal protection, and due process, and also assert unlawful detention and excessive fines or bail.

Respondents now seek an order dismissing the petition, for lack of subject matter jurisdiction.

**DISCUSSION**

A.   Legal Standard

Federal courts are courts of limited jurisdiction, possessing only that power authorized by Article III of the United States Constitution and statutes enacted by Congress pursuant thereto.  See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). Thus, federal courts have no power to consider claims for which they lack subject-matter jurisdiction.  See Chen-Cheng Wang ex rel. United States v. FMC Corp., 975 F.2d 1412, 1415 (9th Cir. 1992).  The court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction.  Id.; see also Spencer Enters., Inc. v. United

4

States, 345 F.3d 683, 687 (9th Cir. 2003); Attorneys Trust v. Videotape Computers Prods., Inc., 93 F.3d 593, 594-95 (9th Cir. 1996).

The burden of establishing that a cause lies within this limited jurisdiction rests upon the party asserting jurisdiction. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). Thus, in the present action, petitioners bear the burden of demonstrating that subject matter jurisdiction exists over this complaint. See, e.g., Tosco Corp. v. Communities for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001).

On a motion to dismiss pursuant to Rule 12(b)(1), the applicable standard turns on the nature of the jurisdictional challenge. A defendant may either challenge jurisdiction on the face of the complaint or provide extrinsic evidence demonstrating lack of jurisdiction on the facts of the case. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). In evaluating a facial attack on jurisdiction, the court must accept the factual allegations in plaintiff's complaint as true. See Miranda v. Reno, 238 F.3d 1156, 1157 n. 1 (9th Cir. 2001).

A motion to dismiss for lack of subject matter jurisdiction may also be a "speaking motion" in which the defendant actually challenges the existence of subject matter jurisdiction. In such a case, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Thornhill Publ'g v. Gen. Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979). Moreover, the plaintiff, who bears the burden of proof that jurisdiction does in fact exist, must establish jurisdiction with evidence from other sources. See Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial (2011) § 9:86.

B.   Respondents' Motion

Respondents contend that the petition should be dismissed for lack of subject matter jurisdiction, for three, somewhat interrelated, reasons.

First, respondents argue that this court lacks subject matter jurisdiction because petitioners' claims arise from eviction proceedings, not under the Constitution, laws, or treaties of the United States (as required under 28 U.S.C. § 1331). In opposition, petitioners contend that they are seeking habeas relief under 28 U.S.C. § 1303, and that

5

the federal right being asserted is their right under the ICRA.  See Santa Clara Pueblo v. Martinez, 436 U.S. 49, 69-70 (1978) (ICRA provides no federal cause of action in federal cases, except for habeas corpus under § 1303).  In reply, respondents reiterate that the federal court has no jurisdiction over eviction proceedings.

Second, respondents contend that petitioners' claims are barred by the Tribe's sovereign immunity from suit.  In opposition, petitioners argue that sovereign immunity does not apply because the petition falls within the ICRA's habeas review provision.  Respondents do not address this issue separately in their reply.

Third, respondents assert that petitioners have not met the requirements for asserting jurisdiction under § 1303.  They contend that the court lacks jurisdiction because this is an action challenging an order of eviction, and because petitioners are not challenging an order issued in a "criminal proceeding," are not "in custody," and have not exhausted tribal remedies.  In opposition, petitioners argue that there is no requirement that the order issue from a criminal proceeding, that they are "in custody" because disenrollment plus eviction under threat of criminal action equals "detention," and that they have exhausted tribal remedies.  In reply, respondents reiterate that neither federal courts nor state courts have jurisdiction over actions relating to tribal tenants occupying housing on tribal trust land, and argue that there is no link between the disenrollment and the eviction, and that being evicted from housing for failure to pay rent is not the same as being "in custody" or "in detention" as defined under case law.

Thus, since petitioners are seeking habeas relief under § 1303 (a "law of the United States," see Santa Clara Pueblo, above), and since respondents appear to have conceded that to the extent that this action is authorized under the ICRA, it is not barred by sovereign immunity, see Poodry v. Tonawanda Band of Seneca Indians, 85 F.3d 874, 898-900 (2nd Cir. 1996), the question for decision here is whether petitioners have established that § 1303 applies – that is, whether this is a simple eviction proceeding over which the federal court has no jurisdiction, or whether petitioners have established that their disenrollment plus their eviction under threat of criminal action qualifies as "detention" for purposes of

§ 1303.

The ICRA guarantees certain rights that are similar but not identical to those in the Bill of Rights and the Fourteenth Amendment of the United States Constitution. See 25 U.S.C. §§ 1301-1303; Poodry v. Tonawanda Band of Seneca Indians, 85 F.3d 874, 881-82 (2d Cir. 1996).

Petitioners bring their constitutional claims via a petition for writ of habeas corpus under ICRA, 25 U.S.C. § 1303, which provides, in full, that "[t]he privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe." 25 U.S.C. § 1303 (emphasis added).

The United States Supreme Court held in Santa Clara Pueblo that a federal court may not enforce the provisions of the ICRA by means of an action for declaratory or injunctive relief, whether sought against the Tribe or its officers. See id., 436 U.S. at 72. That is, a petition for writ of habeas corpus under § 1303 is the only avenue for relief for a violation of the ICRA. Boozer v. Wilder, 381 F.3d 931, 934 (9th Cir. 2004).

Here, the orders that petitioners are challenging are the ruling in the unlawful detainer action, and the orders of eviction. They assert that the unlawful detainer proceedings violated their constitutional rights in a number of ways. Petitioners contend that respondents violated their equal protection rights by singling them out for legal action, while not filing unlawful detainer actions against other, enrolled, Tribe members who were also behind in their rent. Petitioners assert that respondents violated their due process rights by their conduct of the unlawful detainer actions (refusing to allow petitioners to present "proper defenses," amending the Tribal Court rules retroactively, failing to provide an impartial decisionmaker, applying the Tribal Court rules in an arbitrary and capricious manner, and disenrolling them from the Tribe). Finally, petitioners allege that by demanding payment of "administration fees" only from petitioners, and by obtaining a court judgment for those fees, respondents imposed excessive bail or fines on them.

Neither federal courts nor state courts have jurisdiction over eviction actions relating to tribal tenants occupying housing on tribal trust land. See All Mission Housing Authority

v. Magante, 526 F.Supp. 2d 1112, 1116-17 (S.D. Cal. 2007); Round Valley Indian Housing Authority v. Hunter, 907 F.Supp. 1343, 1346 (N.D. Cal. 1995).  This court has no jurisdiction to review orders in eviction actions, as petitioners are not "in detention" and thus have not established their entitlement to relief under § 1303.

Petitioners argue that because the action was brought under 28 U.S.C. § 1303, this court has jurisdiction to hear it.  The Ninth Circuit has clearly held, however, that federal courts have no jurisdiction to hear a claim for habeas corpus under § 1303 unless (1) the petitioner is in custody, and (2) the petitioner first exhausts tribal remedies.  Jeffredo v. Macarro, 599 F.3d 913, 918 (2010).[2]

Taking the second requirement first, the court notes that the parties focus only minimal attention on the question of exhaustion.  Respondents assert that if petitioners wished to challenge the Tribal Court's order that they enter land only with the permission of the Tribal Council, they should have filed a petition for rehearing (which they did not do).  Respondents argue further that petitioners failed to exhaust their tribal administrative remedies by failing to appear at the hearings before the Tribe's Housing Commission (before the unlawful detainer actions were filed).  Petitioners contend that they are not required to exhaust when exhaustion would be futile, and that in any event, they have attempted to appeal the Tribal Court decision, but the governing Ordinance states that decisions by the Tribal Court are final and non-appealable.  It appears probable that petitioners have in fact exhausted their tribal remedies.

The court finds, however, that petitioners have failed to satisfy the second

---

[2] Some courts have added a third requirement – that the underlying tribal proceeding be criminal and not civil in nature.  See Cohen's Handbook of Federal Indian Law, § 9.09 n.280; see also Quair v. Sisco, 359 F. Supp. 2d 948, 963 (E.D. Cal. 2004) (in order to be entitled to a writ of habeas corpus, the petitioner must establish that the decision they are asking the district court to review is criminal and not civil in nature; that petitioner is being detained by the Tribe; and that petitioner has exhausted all other available remedies).  The Poodry court noted that while the Supreme Court in Santa Clara Pueblo did not address whether habeas relief under § 1303 is limited to tribal criminal proceedings, it was likely that § 1303 applies only in the context of a criminal charge or prosecution.  However, the Poodry court ultimately found it unnecessary to decide the question.  Poodry, 85 F.3d at 887-88.

8

requirement. The term "detention" in § 1303 is interpreted similarly to the "in custody" requirement in other habeas contexts. Id. For purposes of habeas corpus, a person is "in detention" or "in custody" when severe restraints are imposed upon the person's liberty. Hensley v. Municipal Court, 411 U.S. 345, 351 (1973). Over the years, courts have expanded the scope of the term "custody" to cover "circumstances [that] fall outside conventional notions of physical custody." Edmunds v. Won Bae Chang, 509 F.2d 39, 40 (9th Cir. 1975). In general, however, courts have found that tribal action constitutes "detention" only in cases involving the most extreme punishments, gross violations of the petitioners' due process rights, and criminal actions.

For example, the Second Circuit concluded that permanent banishment as a criminal sanction constitutes detention for purposes of a habeas action under the ICRA. See Poodry, 85 F.3d 874, 879 (2d Cir. 1996) (stripping petitioners of their tribal membership and imposition of a sentence of "permanent banishment" was sufficiently severe to constitute detention for purposes of § 1303). Poodry involved an intertribal dispute which led the Tribal Council to summarily find the petitioners guilty of a crime – treason. The Tribal Council stripped the petitioners of their tribal membership and ownership of any tribal lands, and permanently banished them from the Tribe's reservation, without providing even minimal due process.

Subsequently, in Shenandoah v. U.S. Dept. of Interior, 159 F.3d 708 (2nd Cir. 1998), the petitioners alleged that they were

> suspended or terminated from employment positions, lost their "voice[s]" within the Nation's governing bodies, lost health insurance, were denied admittance into the Nation's health center, lost quarterly distributions paid to all Nation members, were banned from various businesses and recreational facilities such as the casino, Turning Stone park, the gym, and the Bingo hall, were stricken from Nation membership rolls, were prohibited from speaking with a few other Nation members, and were not sent Nation mailings.

Id. at 714.

The Second Circuit found that the alleged conduct was insufficient to bring the petitioners within the ICRA's habeas provision, in contrast to the situation in Poodry, where the petitioners were "convicted [ ] of treason," sentenced to "permanent banishment," and

9

"stripped of . . . Indian citizenship"; their names were "removed from the Tribal rolls[;]" and they "permanently [lost] any and all rights afforded [tribal] members" – all as part of a criminal sanction. Id. at 714 (quoting Poodry, 85 F.3d at 876, 878). The court noted the petitioners in the case before it had not alleged that they were banished from the Nation, deprived of tribal membership, convicted of any crime, or that defendants attempted in anyway to remove them from Tribal territory. Accordingly, the court concluded that they had not alleged a "severe actual or potential restraint on [their] liberty," and affirmed the district court's dismissal of the habeas claim. Id.

In Jeffredo, the Ninth Circuit held that the petitioners, who had been disenrolled as members of the Tribe but still resided on the reservation, and were being denied access to certain facilities, including the Tribe's senior center, health clinic, and school, had not suffered and were not suffering a "severe actual or potential restraint on liberty to give rise to requisite 'detention.'" Id., 599 F.3d at 919. The Ninth Circuit dismissed the petition for habeas corpus, noting that petitioners had not been banished from the reservation or evicted from their homes, and had never been arrested, imprisoned, fined, or otherwise held by the Tribe. Id.

Here, petitioners attempt to analogize the facts of this case to those in Poodry, where the tribe "banished" the petitioners as part of a sanction following a criminal proceeding. Petitioners here claim that their eviction – when combined with the fact of their disenrollment – is the equivalent of the "banishment" in Poodry. However, there is no evidence of any order of banishment here.

Moreover, the disenrollment occurred in December 2008, and was not part of a criminal or quasi-criminal proceeding, but rather (according to the petition) was the result of a decision by the Tribal Council to reverse a 1982 tribal ordinance that had placed petitioners (and their relatives) on the tribal rolls in the first place. The three-day notices to pay rent or quit the premises were issued more than a year later, in January 2010, and the unlawful detainer actions were filed in May and June 2010, after petitioners failed to pay the back rent that was due. The unlawful detainer actions were civil proceedings, which

included trials at which petitioners were represented by counsel, and the order following the unlawful detainer actions simply stated that the petitioners were being evicted for non-payment of rent, and that they could not re-enter the Robinson Rancheria without the written approval of the Tribal Council.

Petitioners argue that the facts in Jeffredo are distinguishable from the facts in the present case, claiming that in this case, they have identified severe restraints on their liberty. They assert that unlike the petitioners in Jeffredo, they have been issued orders for eviction authorizing their forcible removal from their homes by Tribal law enforcement or other federal or local law enforcement personnel, and the taking of their personal property. Petitioners also assert that because under the judgments, respondents can withhold permission for entry onto the reservation, their movements on the reservation will be restricted.

However, the fact remains that the unlawful detainer actions were civil proceedings, and the evictions are simply a remedy granted to the respondents pursuant to the judgments. There was no unlawful detainer action at issue in Jeffredo. Further, it seems clear that when the court in Jeffredo found that the disenrollment did not constitute "detention" for purposes of habeas jurisdiction under the ICRA, and also noted that the petitioners had not been evicted from their homes and had not suffered destruction of their property, the court was referring to an eviction resulting from or related to the disenrollment. Here, however, the eviction resulted from the judgment in the unlawful detainer actions – based on the petitioners' failure to pay rent – and the disenrollment was a separate action that had occurred more than two years earlier.

Under Jeffredo, the court lacks jurisdiction under the ICRA to review an order of disenrollment, id. at 919, and the eviction order, which resulted from the ruling in the unlawful detainer action, does not serve to transform the disenrollment into a punitive "banishment." In addition, as respondents argue, unlawful detainer is a civil action brought pursuant to state law, and it does not provide a basis for federal subject matter jurisdiction. See, e.g., Round Valley Indian Housing Authority v. Hunter, 907 F.Supp. 1343, 1438 (N.D.

11

Cal. 1995).

## CONCLUSION

In accordance with the foregoing, the motion to dismiss the petition for habeas corpus for lack of subject matter jurisdiction is GRANTED.

**IT IS SO ORDERED.**

Dated: July 1, 2011

PHYLLIS J. HAMILTON
United States District Judge